IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FREDERIC SIMARD,                )
                                )
        Plaintiff,              )
                                )
            v.                  )     1:15cv1649(JCC/TCB)
                                )
UNIFY, INC.,                    )
                                )
        Defendant.             )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant Unify Inc.'s ("Unify" or "Defendant") Motion for Summary Judgment [Dkt. 34].  For the following reasons, the Court grants Defendant's Motion for Summary Judgment, and enters judgment in favor of Defendant and against the Plaintiff, Frederic Simard ("Simard" or "Plaintiff").

### I. Background

The following facts are taken from the parties' Local Rule 56(B) statements and are undisputed[1] unless otherwise indicated.  Unify is a global communications and software firm with an office in Reston, Virginia.  (SOF, ¶¶ 1-2.)  On June 1, 2012, Unify hired Plaintiff, then 40 years of age, to work at

---

[1]        For ease of reference, undisputed facts are referred to by "SOF" and paragraph number consistent with their numbering in Defendant's statement of undisputed facts. (*See* Def.'s Mem. in Supp. [Dkt. 35].)

1

its Reston, Virginia office as its Vice President of Pricing, Strategy, and Policy. (*Id.*) In the summer of 2014, Plaintiff interviewed, and was selected for a new role as the Senior Vice President, Portfolio Management for Unify. (*Id.* at ¶¶ 3-7.) The new role carried no increase in compensation. (*Id.* at ¶ 9.)

In 2014, Unify began a major transformation of its business strategy and its product lines. (*Id.* at ¶ 10.) This transformation was designed in part to enhance Unify's ability to successfully target millennials in the marketplace. (*Id.* at ¶¶ 11-12.) Part of this transformation was a major global restructure and reduction in force. (*Id.* at ¶ 13.)

Towards the end of 2014, Dean Douglas ("Mr. Douglas"), Unify's CEO, was introduced to a recent college graduate, Phillip Brown ("Mr. Brown"), by a mutual friend. (*Id.* at ¶ 15.) Mr. Douglas thought highly of Mr. Brown's character, and when Mr. Brown told Mr. Douglas that he was interested in working for a technology company like Unify, Mr. Douglas decided to help Mr. Brown find a job with Unify. (*Id.* at ¶ 16.) Mr. Douglas sent Mr. Brown's resume to Unify's Chief Marketing Officer, Bill Hurley ("Mr. Hurley"), and another Senior Vice President at Unify, Jon Pritchard ("Mr. Pritchard"), to see if they could find a position for Mr. Brown. (*Id.* at ¶ 17.) Mr. Douglas had no specific role in mind for Mr. Brown, but wanted to see if Unify had a need for him. (*Id.*) Both Mr. Pritchard and Mr.

2

Hurley indicated that they could use Mr. Brown in their organizations. (*Id.*)  Mr. Douglas followed up with Mr. Hurley about the possibility of using Mr. Brown in conjunction with a new product variously referred to as either "Ansible" or "Circuit", which was designed to target millennial customers. (*Id.* at ¶¶ 12, 18-19.)

At the time, there was very little generational diversity at Unify. (*Id.* at ¶ 20.)  As of June 2014, only eight percent (8%) of the United States based employees in Mr. Hurley's marketing team were under the age of 40. (*Id.* at ¶ 21.)  Only fourteen percent (14%) of Unify's United States based employees company-wide were under the age of 40. (*Id.*)  Part of Mr. Brown's appeal to Mr. Douglas and Mr. Hurley was that he might bring a new, generationally diverse, millennial perspective to the marketing team. (*Id.* at ¶ 22.)  Although Mr. Brown was a recent college graduate and had limited experience in the workplace, Mr. Hurley felt that his team could mentor him and develop his skills to become a significant part of Unify's workforce. (*Id.* at ¶ 24.)

Because Mr. Hurley thought Mr. Brown would be a good fit, Mr. Hurley sent an email to Plaintiff on or before October 16, 2014 to determine whether Plaintiff could find a position for Mr. Brown focused on selling Circuit. (*Id.* at ¶ 25.) Plaintiff worked under Mr. Hurley at Unify.  Mr. Hurley

3

emphasized to Plaintiff that he thought Mr. Brown would be a good fit for the Circuit program in large part because of his youth and his perspective as a millennial. (*Id.* at ¶ 27-28.) Plaintiff replied that he looked forward to meeting Mr. Brown and began working on a draft of a job description for a position for Mr. Brown. (*Id.*) Mr. Hurley did not explicitly order or tell Plaintiff to release anyone currently employed by the company in order to make room for Mr. Brown. (*Id.* at ¶ 30.)

Plaintiff contends that the effect of the new hire at a time when the company was undergoing a reduction in force was necessarily that an existing employee would be displaced, but he points to no evidence that Mr. Hurley ever instructed him to release either an older employee or an employee over the age of 40 to make room for Mr. Brown. (Pl.'s Mem. in Opp'n [Dkt. 37] at 3.) An email sent by Plaintiff on November 11, 2014 clarifies that Mr. Brown was not being considered as a replacement for any existing or recently terminated Unify employee, but was being considered for a newly created position which was already accounted for in the 2015 budget. (SOF at ¶ 31.) Plaintiff never asked Mr. Hurley or anyone else if he would have to terminate an older, existing employee to accommodate Mr. Brown's hire. (*Id.* at ¶ 33.)

Plaintiff sent Mr. Hurley a job description for a new position to be called "Solutions Marketing Specialist", which

4

Mr. Hurley then forwarded to Mr. Brown. (*Id.* at ¶¶ 34-35.) Mr. Brown responded that he was interested, and Mr. Hurley asked Plaintiff to begin working on bringing Mr. Brown on-board at Unify. (*Id.* at ¶¶ 36-37.) Plaintiff agreed that he would initiate contact with Mr. Brown. (*Id.*)

Plaintiff set up an interview for Mr. Brown with Unify's Vice President, Portfolio Management, North America, Diane Salvatora ("Ms. Salvatora"). (*Id.* at ¶¶ 38-39.) On November 4, 2015, Ms. Salvatora reported back to Plaintiff that while she thought Mr. Brown would be a good college hire, he was not a match for the position she had in mind. (*Id.*) On November 9, 2014, Mr. Hurley asked Plaintiff if he had offered Mr. Brown a position yet. (*Id.* at ¶ 40.) Plaintiff responded that he had not, but the Vice President of Global Solution Marketing, Jan Hickisch ("Mr. Hickisch"), would be interviewing Mr. Brown for a role on a Circuit marketing team under Mr. Hickisch's direction. (*Id.*) Mr. Hurley never interviewed Mr. Brown, instead relying on Plaintiff to advance the candidate and provide feedback. (*Id.* at ¶ 42.)

On November 10, 2014, Plaintiff contacted a recruiter at Unify, John Marshall ("Mr. Marshall"), to help him pull together an offer letter for Mr. Brown. (*Id.* at ¶ 44.) On November 14, 2014, Plaintiff emailed Mr. Marshall asking him to assist with getting an offer to Mr. Brown as soon as possible.

(*Id.* at ¶ 46.)  Plaintiff copied Mr. Brown on this e-mail.
(*Id.*)

Three days later, on November 17, 2014, Mr. Marshall
informed Plaintiff that he had completed a salary computation
recommending a starting salary of $60,000, and asked Plaintiff
if he had spoken with Mr. Brown about a starting salary or start
date yet.  (*Id.* at ¶ 47.)  Later that same day, Plaintiff
unilaterally instructed Mr. Marshall to hold off on the
recruitment of Mr. Brown due to "new budget calculations . . .
making it impossible to proceed for the time being."  (*Id.* at ¶
48.)  Plaintiff then asked Mr. Marshall to contact Mr. Brown and
advise him they could not proceed with the hiring.  (*Id.*)

After receiving the unexpected news that there was no
position for him at Unify, Mr. Brown reached out to Plaintiff
expressing concern over the lack of an offer and asking about
"budgetary issues" which Mr. Marshall had referenced in his
email to Mr. Brown informing him that the position for which he
was being considered would go unfilled.  (*Id.* at ¶ 49.)  Mr.
Brown and Plaintiff had a telephone conversation regarding the
decision not to hire Mr. Brown, and Mr. Brown followed up with
an email thanking Plaintiff for his support and asking Plaintiff
to consider him for any future positions.  (*Id.* at ¶ 50-51.)

At no point prior to telling Mr. Brown that his hire
was being placed on indefinite hold did Plaintiff express any

concerns to Mr. Hurley about being unable to hire Mr. Brown for any reason, budgetary or otherwise. (*Id.* at ¶ 52; Pl.'s Mem. in Opp'n at 3-4.) On November 18, 2014, Mr. Brown emailed Mr. Douglas explaining that he had been informed by Plaintiff that Unify would be unable to hire him for budgetary reasons. (SOF, ¶ 53, 54.) Mr. Douglas was blindsided by this news. (*Id.*) Mr. Douglas was disappointed by this news, as everything he had heard regarding the prospective hire of Mr. Brown up to this point had been positive. (*Id.* at ¶ 55.) In response to this news, Mr. Douglas forwarded Mr. Brown's email to Mr. Pritchard to explore other options to employ Mr. Brown, and then spoke to Mr. Hurley on the evening of November 18, 2014. (*Id.* at 56.)

Prior to his conversation with Mr. Douglas on the evening of November 18, 2014, Mr. Hurley had received no notice of any issues in hiring Mr. Brown, and believed that the hiring was progressing without impediment. (*Id.* at ¶ 57.) Mr. Douglas' call took Mr. Hurley by surprise, and Mr. Hurley suggested Mr. Douglas might be mistaken as he had heard only positive indications from Plaintiff up to this point. (*Id.* at ¶ 58.)

The next day, November 19, 2014, Mr. Hurley spoke with Plaintiff on the phone regarding the non-hiring of Mr. Brown. (*Id.* at ¶ 60.) Defendant contends that during this phone call, Mr. Hurley expressed to Plaintiff that he was concerned about

Plaintiff advising a job candidate that the company was experiencing budgetary problems. (*Id.* at ¶ 62.)  Plaintiff contends that on this phone call he told Mr. Hurley that he could not go through with the hiring of Mr. Brown because he thought that it would be age discrimination. (Pl.'s Mem. in Opp'n at 4.)  The only concrete evidence of what was discussed on that November 19, 2014 phone call is an email sent the next day, November 20, 2014, from Plaintiff to Mr. Hurley in response to the phone call which states that Plaintiff "blew it, no excuses," and "should have asked [Mr. Hurley'] help with the budget issue, the offer was literally in the work with recruiting . . . [Plaintiff] told Phil [Plaintiff] was going to follow up with [Mr. Hurley] (on Friday during 1-1), for whatever its worth [Plaintiff] didn't close the door with Phil." (Def.'s Ex. 3, Simard Dep. [Dkt. 35-3], at Ex. 9.)

Mr. Hurley was concerned by the serious failure in communication leading to this event and lost confidence in Plaintiff's ability to remain in his senior role with the company. (SOF, ¶ 68.)  Shortly after this conversation and email, Mr. Hurley met with Senior Vice President of Human Resources Carrie Yonenson ("Ms. Yonenson") regarding his options in addressing what he saw as Plaintiff's poor performance. (*Id.* at ¶ 71.)  Mr. Hurley and Ms. Yonenson discussed several options

including a 90-day performance improvement plan, which Ms.
Yonenson drafted for review.  (*Id.* at ¶ 72.)

Ultimately, Mr. Hurley advised Ms. Yonenson that he
and Mr. Douglas had no confidence in Plaintiff's continued
ability to successfully perform in his role and had decided to
terminate Plaintiff's employment.  (*Id.*)  Plaintiff claims that
he was repeatedly told that he was being let go because of his
vocal opposition to what he believed to be the impermissibly
discriminatory hiring of Mr. Brown, but he can point to no
evidence apart from his own deposition and declarations
demonstrating that he ever voiced opposition to Mr. Brown's
hiring on the grounds that it was discriminatory or that his
opposition to Mr. Brown's hiring, rather than his failure to
communicate effectively, was in fact the reason for his
termination at Unify.  On December 8, 2014, Mr. Hurley
terminated Plaintiff's employment.  (*Id.* at ¶ 74.)  Plaintiff's
separation date was scheduled to be effective December 31, 2014
in order to give Plaintiff time to assist with the transition
and allow him a head start in finding a new job.  (*Id.* at ¶ 75.)

After he was advised of his pending termination,
Plaintiff requested a meeting with Ms. Yonenson to bring a
situation to her attention which he thought should be
"documented for future reference."  (*Id.* at ¶ 76; Def.'s Ex. 3,
Simard Dep., at Ex. 5.)  Plaintiff met with Ms. Yonenson on

December 9, 2014.  (SOF, ¶ 77.)  At this meeting, Plaintiff complained about what he described as Mr. Hurley's unprofessional conduct in cursing and hanging up on Plaintiff during their November 19, 2014 phone call.  (*Id.*)  Plaintiff shared with Ms. Yonenson at this meeting that he disagreed with the decision to separate him from employment.  (*Id.* at ¶ 78.)

Mr. Brown was eventually hired in Mr. Pritchard's group to fill an open position.  (*Id.* at ¶ 79.)  Mr. Brown remains employed by Unify as of May 19, 2016, although both Mr. Douglas and Mr. Hurley have moved on from Unify to roles at other companies.  (*Id.* at ¶ 81.)

Plaintiff filed this suit alleging unlawful retaliation for engaging in a protected act under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") on December 14, 2015.  After discovery, Defendant filed this Motion for Summary Judgment on June 10, 2016.  The Motion has been fully briefed, and oral argument was heard on July 7, 2016.  The Motion is now ripe for decision.

## II. Legal Standard

Summary judgment is appropriate only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party always bears the initial burden of "informing the district court

of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (stating the opposing party must "come forward with specific facts showing that there is a genuine issue for trial").  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'"  *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)).  Pursuant to Local Rule 56(B), the non-moving party's opposition briefs must make a "good faith effort to specifically identify which material facts are genuinely in dispute." *Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 346 (E.D. Va. 2015.)  Any facts listed in the moving party's listing of material facts which are not specifically controverted in the non-moving party's statement of facts in opposition to the motion will be deemed to be admitted for purposes of the motion for summary judgment.  *See* Local Civ. R. 56(B).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. Where there is conflicting evidence, the court must credit the evidence of both sides and acknowledge that there is a genuine issue of material fact that cannot be resolved by summary judgment. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868-69 (2014) (stating that summary judgment is inappropriate where each side has put forward competent evidence that raises a dispute about a material fact).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984)(quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), aff'd 388 F.2d 987 (4th Cir. 1967)). Where a party

relies solely upon its own self-serving testimony without any corroboration as evidence, there is no genuine issue of material fact. *See Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000)(self-serving affidavit insufficient to survive summary judgment); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(no genuine issue of material fact where only evidence is "uncorroborated and self-serving" testimony); *King v. Flinn & Dreffein Eng. Co.*, No. 7:09cv410, 2012 WL 3133677 at *10 (W.D. Va. July 30, 2012)(same).  Where assertions made by affidavits or declarations prepared for the motion for summary judgment are conclusory or conflict with prior statements or deposition testimony, the affidavit or declaration is insufficient to create a genuine issue of material fact. *Barwick*, 736 F.2d at 959(citing *Radobenko v. Automated Equipment Co.*, 520 F.2d 540, 544 (9th Cir. 1975)).

### III. Analysis

Plaintiff alleges that his termination was unlawful retaliation for engaging in a protected act under the ADEA.  The ADEA prohibits an employer from discriminating against an employee "because such individual, member, or applicant for membership has opposed any practice made unlawful by this section."  29 U.S.C. § 623(d).  A plaintiff can succeed with a claim for retaliation in violation of the ADEA through either direct evidence of retaliation, or the *McDonnell Douglas* burden

13

shifting framework as adapted to ADEA retaliation claims.[2]   *See*

*Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 684 (4th

Cir. 2009).  Where a plaintiff advances a claim for retaliation

in violation of the ADEA through the *McDonnell Douglas* scheme,

he must establish a prima facie case of retaliation by

demonstrating that (i) he engaged in a protected activity, (ii)

his employer took adverse action against him, and (iii) a causal

relationship existed between the protected activity and the

adverse employment action.  *See, e.g.*, *Johnson*, 309 F. App'x at

684; *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008);

*Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.

1989).  If the employee establishes a prima facie case of

retaliation, the burden shifts to the employer to rebut it by

presenting evidence of a legitimate, non-retaliatory reason for

the adverse action.  *Johnson*, 309 F. App'x at 684.  If the

employer presents evidence of a legitimate, non-retaliatory

reason for their actions, the burden shifts back to the employee

to show that the employer's legitimate reason is pretextual.

*Id.*

Plaintiff here cannot demonstrate that he engaged in a

protected act under the ADEA and therefore he does not satisfy

the first element of a prima facie case of ADEA retaliation.

---

[2]    Plaintiff here does not assert that he has any direct
evidence of discrimination, and argues his case using the
*McDonnell Douglas* burden shifting framework.

Additionally, even if Plaintiff were able to establish a prima facie case for retaliation, Defendant has demonstrated an alternative, legitimate basis for Plaintiff's dismissal and Plaintiff cannot show that this legitimate basis is pretextual. The Court addresses these two independently sufficient bases for granting Defendant's Motion for Summary Judgment in turn.

> A.   Plaintiff Has Not Demonstrated A Genuine Issue of Fact as to Whether He Engaged in a Protected Activity Under the ADEA

The ADEA provides that an employer may not discriminate against an employee "because such individual, member, or applicant for membership has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). An action taken in opposition to a practice of the employer "is protected when it responds to an employment practice that the employee reasonably believes is unlawful." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006)(citing *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406-07 (4th Cir. 2005)). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Was. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). In the parallel field of sexual discrimination in violation of Title VII, the Supreme

Court has held that "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 276 (2009).

In order for an opposition activity to be protected under the ADEA, a plaintiff must demonstrate that he took the activity because "he 'subjectively (that is, in good faith) believed' that his employer violated the ADEA, and that his belief 'was *objectively* reasonable in light of the facts.'" *Johnson*, 309 F. App'x at 685 (quoting *Jordan*, 458 F.3d at 339)(emphasis in orginal).  In determining whether an employee has engaged in a legitimate opposition activity, the Fourth Circuit has held that courts should "balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Johnson*, 309 F. App'x at 685 (quoting *Laughlin*, 149 F.3d at 259).

In the case before the Court, the only instance prior to the decision to terminate Plaintiff was made where Plaintiff is alleged to have voiced any concern that Unify was engaging in age discrimination by seeking to hire Mr. Brown is supposed to

16

have taken place during the November 19, 2014 phone call between
Plaintiff and Mr. Hurley.  The only evidence that Plaintiff can
point to indicating that his opposition to hiring Mr. Brown was
actually based on a belief that it constituted impermissible age
discrimination is his own deposition testimony and his
declaration in opposition to Defendant's Motion for Summary
Judgment.  Absent any corroborating evidence, these self-serving
assertions made after the initiation of the instant litigation
are not enough to create a genuine issue of fact as to whether
Plaintiff's refusal to hire Mr. Brown was actually based on a
belief that hiring Mr. Brown would be impermissible
discrimination.  *See Barnes*, 201 F.3d at 335 (self-serving
affidavit insufficient to survive summary judgment); *Villiarimo*,
281 F.3d at 1061 (no genuine issue of material fact where only
evidence is "uncorroborated and self-serving" testimony); *King*,
2012 WL 3133677 at *10 (same).

    The only objective evidence of what was discussed
during the November 19, 2014 phone call introduced by either
party is an email sent from Plaintiff to Mr. Hurley the
following day.  That email includes no mention of age
discrimination or opposition to the hire of Mr. Brown on that
basis.  In fact, the email expresses remorse on Plaintiff's part
because he "blew it, no excuse" on the non-hiring of Mr. Brown.
(Def.'s Ex. 3, Simard Dep., at Ex. 9.)  Plaintiff cannot point

17

to any evidence, apart from his own deposition testimony and his declaration, which tends to show that he actually had or voiced any concerns over age discrimination until well after he was terminated from employment by Unify.

The only objective indicia of what was discussed on the November 19, 2014 phone call contains no mention of age discrimination or opposition based on a belief that Unify was engaging in discriminatory activity.  Plaintiff identifies only one other instance where he allegedly voiced opposition to the hire of Mr. Brown on the grounds that it would constitute impermissible discrimination prior to the beginning of this litigation.  Plaintiff makes the unsupported assertion that when Plaintiff met with Ms. Yonenson in Mid-December, 2014, he "repeated to her the concern [he] had expressed to Mr. Hurley about taking special measures to hire an unqualified new person based on his youth while we were in the middle of a mass layoff of much older employees." (Pl.'s Decl. in Opp. [Dkt. 37-1], ¶ 19; *See also* Def.'s Ex. 3, Simard Dep., 136:19-22.)  As with the November 19 phone call, Plaintiff can point to no other evidence corroborating these claims, either in the form of documentation or deposition testimony of Ms. Yonenson.

The Court therefore finds that there is not a genuine dispute of fact as to whether, at the time of his refusal to hire Mr. Brown, Plaintiff had, or was motivated by, a subjective

18

belief that Defendant was violating the ADEA.  Plaintiff must show that he "'subjectively (that is, in good faith) believed' that his employer violated the ADEA" and engaged in opposition activity on that belief to establish a prima facie case of retaliation.  *Johnson*, 309 F. App'x at 685 (quoting *Jordan*, 458 F.3d at 339).  On the evidence now before the Court, Plaintiff cannot demonstrate that he acted on a subjective belief that Defendant was violating the ADEA.  Accordingly, the Court grants Defendant's Motion for Summary Judgment.[3]

>    2.   Plaintiff Has Not Demonstrated a Genuine Issue of Fact on Whether Defendant's Proffered Legitimate Reason for Termination is Pretextual

---

[3]    Defendant also contends that Plaintiff cannot demonstrate that his alleged protected act was the "but for" cause of the termination of his employment.  *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009)("but-for" causation generally required in ADEA claims); *Univ. of Tx. Southwestern Med. School v. Nassar*, 133 S.Ct. 2517, 2533 (2013)("but-for" causation required in Title VII retaliation claims).  Defendant cites *Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014) as support for the proposition that "temporal proximity alone is not sufficient to establish that [the plaintiff's] engagement in protected activity was a 'but for' cause of" the defendant's adverse action.  However, in *Staley* the Fourth Circuit was addressing the issue of whether the defendant's proffered legitimate reason was pretextual, not whether the Plaintiff had made a prima facie showing of "but for" causation.  *Id*. at 155.  Accordingly, the Court believes that here, as in *Weth v. O'Leary*, 796 F. Supp. 2d 766, 782 (E.D. Va. 2011), the extreme temporal proximity of the alleged protected act and the adverse action would be sufficient to create a genuine dispute of material fact regarding "but for" causation at the prima facie stage.

Where the employer presents a "legitimate, non-discriminatory" reason for its adverse action against the employee, the burden shifts back to the employee to produce evidence demonstrating that "the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  In considering whether the proffered explanation is pretextual, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Id.*

To succeed in showing that the proferred valid reason is pretextual, "the plaintiff cannot merely argue that the reason for firing was not 'wise, fair, or even correct.'" *Smith v. Loudon Cty. Public Schools*, No. 1:15cv956, 2016 WL 659786, at *13 (E.D. Va. Feb. 18, 2016)(quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998)(in turn quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997))).  Instead, the inquiry is into whether the trier of fact could determine that the defendant's stated reason was not the *actual* reason for plaintiff's termination. *DeJarnette*, 133 F.3d at 298-99.

In making this determination, it "is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Tech. Apps. & Serv. Co.*, 80 F.3d 954,

960-61 (4th Cir. 1996).  These principles ensure that the Court does "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette*, 133 F.3d at 298-99.

Defendant suggests that it had a legitimate reason to terminate Plaintiff's employment because "he did not follow instructions, misled his supervisors, and did not properly consult his supervisors before making the unilateral decision to advise a candidate that he was putting the hiring process on indefinite hold." (Def.'s Mem. in Supp. at 21.)  "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960.  Additionally, "when an employer offers multiple reasons for the termination of an employee, the employee must rebut each of the employer's proffered reasons for its actions." *Freeman v. Perdue Farms Inc.*, 496 F. App'x 920, 926 (11th Cir. 2010); *see also, Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000)(same); *Clay v. Holy Cross Hospital*, 105 F.3d 343, 349 (7th Cir. 1997)(same).

There is no genuine dispute of fact regarding Plaintiff's failure to keep his supervisors informed of the status of Mr. Brown's prospective hire.  Likewise, it is undisputed that this failure to communicate caused Mr. Hurley to

21

learn about the non-hire of Mr. Brown from his boss, the CEO of
Unify, Mr. Douglas.  In light of this embarrassing incident,
Defendant's assertion that "[a]s a result of Plaintiff's
conduct, his supervisors lost confidence in Plaintiff's ability
to continue to perform in his position," is thoroughly supported
by the record.

Plaintiff realized that his performance was poor
during the events surrounding the non-hire of Mr. Brown,
admitting in his email to Mr. Hurley on November 20, 2014 that
he "blew it, no excuse."  (Def.'s Ex. 3, Simard Dep. at Ex. 9.)
Plaintiff recognized in that email that his failure to
communicate effectively with Mr. Hurley, his superior officer at
Unify, had put Mr. Hurley in an awkward situation and damaged
Plaintiff's relationship with his superior officer at Unify.

Plaintiff is correct that "[t]he fact that an employer
'has offered different justifications at different times for [an
adverse employment action] is, in and of itself, probative of
pretext.'" *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d
562, 576 (4th Cir. 2015)(quoting *EEOC v. Sears Roebuck and Co.*,
243 F.3d 846, 852-53 (4th Cir. 2001)).  However, by Plaintiff's
own admission, Mr. Hurley informed Plaintiff at the time of his
termination that he was being let go because he "had recently
made a poor decision."  (Simard Decl. [Dkt. 37-1], ¶ 18.)  In
all of the evidence before the Court, Defendant has been

22

consistent that it was primarily Plaintiff's poor decision making and communication, both in his failure to communicate with his superiors and in his oversharing regarding Unify's financial situation with Mr. Brown, during the events surrounding the non-hiring of Mr. Brown that led to his termination.

Accordingly, the Court finds that no reasonable jury could find that Defendant's proffered legitimate reasons for terminating Plaintiff are pretextual on the evidence in the record.

### IV. Conclusion

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment, and enters judgment in favor of the Defendant, Unify, Inc., and against the Plaintiff, Frederic Simard.  An appropriate order will issue.


/s/
July 15, 2016                       James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE

23